# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

ALL AMERICAN OILFIELD, LLC,

        Plaintiff, Appellant,

        v.

COOK INLET ENERGY, LLC,

        Defendant, Appellee.

Case No. 3:17-cv-00127-SLG

Bankruptcy Adv. No. A16-90002-GS

## ORDER CERTIFYING QUESTIONS TO THE SUPREME COURT OF ALASKA[1]

This case is presently before the United States District Court on appeal from the United States Bankruptcy Court for the District of Alaska.

Pursuant to Alaska Rule of Appellate Procedure 407(a), the District Court for the District of Alaska respectfully requests the Alaska Supreme Court to answer the following certified questions of Alaska law as set forth below:

> 1. Can a "dump lien" under AS 34.35.125 *et seq.* apply to gas stored in its natural reservoir; if so, was a mineral "dump" created under AS 34.35.140 and AS 34.35.170(a)(1) when All American drilled three natural gas wells at the request of Cook Inlet?
>
> 2. Is a mineral "dump" created under AS 34.35.140 and AS 34.35.170(a)(1) each time that Cook Inlet releases natural gas from the natural reservoir in which the gas was formed and transports that gas through a pipeline to the point of sale?

The Alaska Supreme Court's answers to these questions may be determinative of this appeal to which it appears there is no controlling Alaska Supreme Court precedent. The state's highest court has acknowledged the need to adapt the language of prior cases

---

[1] The Court notes that this is the first time that the undersigned judge has certified questions of state law to the Alaska Supreme Court, after having served as a federal district court judge for over six years.

interpreting Alaska's dump lien statutes to modern times.[2] But the Alaska Supreme Court has not had the opportunity to determine the applicability of those statutes to natural gas reservoirs. The Alaska Supreme Court may, in its discretion, answer these questions in any form that it chooses.

## BACKGROUND

The facts underlying this case are not disputed. On October 1, 2014, All American Oilfield, LLC, an Alaska-based oilfield services company, entered into a contract with Cook Inlet Energy, LLC, to provide oilfield services, including the operation, development, and extraction of gas on real property in the North Fork field owned and/or leased by Cook Inlet.[3] With the help of All American, Cook Inlet accessed and extracted underground natural gas reservoirs, which were later sold to third parties.

Previously, on February 3, 2014, Cook Inlet and certain other affiliates had refinanced an existing $100 million credit facility with Apollo Investment Corp.[4] The

---

[2] *See D.H. Blattner & Sons, Inc., v. N.M. Rothschild & Sons, Ltd.*, 55 P.3d 37, 44 (Alaska 2002) ("Considering the historical importance of mining for precious metals and the present importance of oil drilling to the Alaska economy, there have been surprisingly few cases in recent years involving the interpretation of this statute. Indeed, most of the important cases remain from Alaska's territorial days. Technological advances in the mining industry and overall changes in the conduct of the business in this state since those times require us to adapt the language in those cases to modern times. At the same time we must respect the underlying principles embodied in those cases and the statutes upon which they relied.").

[3] Docket 5-1 (Compl.) at 5–6.

[4] Docket 5-1 (Cook Inlet's Mot. Summ. J.) at 113, ¶ 6.

Case No. 3:17-cv-00127-SLG, *All American Oilfield v. Cook Inlet Energy*
Order Certifying Questions to the Alaska Supreme Court
Page 2 of 7

agreement granted Apollo Investment a security interest in substantially all of Cook Inlet's assets, including the gas reserves at issue in this case.[5]

In May of 2015, All American concluded its work.[6] Cook Inlet failed to pay All American for that work within the time period required by the contract.[7] On June 11, 2015, All American recorded a claim of lien pursuant to Alaska Statute § 34.35.125 *et seq.* in the Homer Recording District.[8] After recording the lien, Cook Inlet paid a portion of the balance remaining, but $267,706.32 remained unpaid.[9]

On August 6, 2015, an involuntary petition for relief under Chapter 11 of Title 11 of the United States Code was filed against Cook Inlet in the United States Bankruptcy Court for the District of Alaska.[10] On January 14, 2016, All American filed an adversary complaint in the Bankruptcy Court seeking a determination that its lien against Cook Inlet on the gas stored in the North Fork wells took priority above all other liens and encumbrances, including priority over Apollo Investment's security interest.[11]

On January 27, 2016, the Bankruptcy Court held a hearing where Cook Inlet introduced evidence that the amount owed to Apollo Investment far exceeded the value

---

[5] Docket 5-1 at 113, ¶ 7.

[6] Docket 5-1 at 6, ¶ 10.

[7] Docket 5-1 at 6, ¶ 13.

[8] Docket 5-1 at 6, ¶ 13.

[9] Docket 5-1 at 7, ¶ 14.

[10] Docket 5-1 at 114, ¶ 10.

[11] Docket 5-1 at 8–9.

Case No. 3:17-cv-00127-SLG, *All American Oilfield v. Cook Inlet Energy*
Order Certifying Questions to the Alaska Supreme Court
Page 3 of 7

of all of Cook Inlet's assets, including the North Fork gas reserves.[12] On April 4, 2016, All American moved for summary judgment, seeking a determination that All American had a valid dump lien in the North Fork gas reserves under AS 34.35.140 that took priority over Apollo Investment's lien.[13] On April 8, 2016, Cook Inlet cross-moved for summary judgment, asserting that All American did not have a senior lien because it did not meet the statutory requirements for a dump lien.[14]

On August 16, 2016, All American filed a motion with the Bankruptcy Court seeking to certify two questions relating to the dump lien statutes to the Alaska Supreme Court.[15] The Bankruptcy Court denied the motion for certification, holding that "the statutory scheme related to mining liens, and the classification of property subject to those liens (e.g., against the mine or well, against machinery and equipment, and against the 'dump' or 'mass') enables a straightforward interpretation of those statutes."[16]

On March 21, 2017, the Bankruptcy Court granted Cook Inlet's motion for summary judgment in part and denied All American's motion for summary judgment.[17]

---

[12] Docket 5-1 (Tr. of Hr'g) at 135–43.

[13] Docket 5-1 (All American's Mot. Summ. J.) at 34. All American also moved for summary judgment on its second cause of action for a constructive trust claim. However, All American and Cook Inlet later stipulated to dismissal of the constructive trust claim with prejudice. Docket 5-4 at 123. All American does not appeal any decision relating to the constructive trust claim.

[14] Docket 5-1 at 103.

[15] Docket 5-4 (All American's Mot. for Certification) at 35–38.

[16] Docket 5-4 (Order re: All American's Mot. for Certification) at 87. This Court expresses no opinion at this time whether the Bankruptcy Court's denial of the motion to certify was an abuse of discretion. That is one of the issues on appeal to this Court.

[17] Docket 5-4 (Order re: Cross Mots. for Summ. J.) at 55–80.

Case No. 3:17-cv-00127-SLG, *All American Oilfield v. Cook Inlet Energy*
Order Certifying Questions to the Alaska Supreme Court
Page 4 of 7

The court held that "All American has failed to show that a dump or mass exists to which its Lien Claim could attach" under AS 34.35.140.[18] Accordingly, the court found "All American cannot establish a priming dump lien in the natural gas remaining in the North Fork wells superior to Apollo Investment's secured interests under its previously recorded deed of trust."[19]

All American filed a timely appeal to this Court on May 31, 2017.[20] This appeal focuses on whether All American has a valid dump lien under AS 34.35.140 that "is prior and preferred over a deed, mortgage, bill of sale, attachment, or other claim whether given before or after the work for which the lien is claimed is started."[21] All American asserts that the territorial cases interpreting the dump lien statutes are "grossly antiquated" and should the dump lien statutory scheme require "removal" and "piling" then it "necessarily means it can never meaningfully apply to natural gas" because natural gas is "stored in its natural reservoir over 90% of the time."[22]

Two territorial cases provide some interpretation of the statute. However, at the time of those cases, the statute did not include oil and gas. It was not until 1933 that the statute was amended to include oil and gas. In *Nordstrom v. Sivertsen-Johnsen Min. & Dredging Co.*, Alaska's territorial court reviewed the dump lien statutes and held that

---

[18] Docket 5-4 at 76.

[19] Docket 5-4 at 76–77.

[20] Docket 1 (Notice of Appeal).

[21] AS 34.35.140(c).

[22] Docket 7 (Appellant's Opening Br.) at 28–29.

Case No. 3:17-cv-00127-SLG, *All American Oilfield v. Cook Inlet Energy*
Order Certifying Questions to the Alaska Supreme Court
Page 5 of 7

minerals that were not piled up or collected into a dump or mass could not be considered a "dump" or "mass."[23]  The court held that a dump or mass meant

> the mineral-bearing sands piled up or collected into an aggregate heap or body, and not the mineral-bearing sands or dirt that has been only loosened or broken up, but not piled up on the surface of the ground in some place, so as to constitute a well-defined body of mineral or other matter easily and readily observable, set apart and separated from the native earth, and particularly distinguished from the mere loosened, broken, or dug-up, or thawed-out, earth.[24]

Alaska's territorial court revisited the statutes in *Studdert v. Tanana Valley Gold Dredging Co.* to determine that gold that was extracted but then promptly removed from the site and delivered to a local bank was not a "dump" or "mass" under the dump lien statutes.[25]  The court held that "the Legislature intended, by use of this language, to refer only to sands, earth, ore, rock, and minerals which were either deposited in dumps or piles, placed in hoppers or tanks or in sluice boxes or bunkers, or other receptacles, located in the same place."[26]

In 1933, the dump lien statutes were amended.  The term "dump" was expanded to include oil, gas, and other fluids.[27]  The amendment also added "reservoirs" to where the materials could be deposited.  However, the statute has continued to require that the product be "deposited in dumps or piles, or placed in hoppers, tanks, or reservoirs, or in

---

[23] 5 Alaska 204 (D. Alaska 1914).

[24] *Id.* at 209.

[25] 8 Alaska 267 (D. Alaska 1931).

[26] *Id.* at 271.

[27] 1933 Compiled Laws of Alaska § 2001 ("Definitions") (now codified at AS 34.35.170(a)(1)).

Case No. 3:17-cv-00127-SLG, *All American Oilfield v. Cook Inlet Energy*
Order Certifying Questions to the Alaska Supreme Court
Page 6 of 7

sluice boxes or bunkers or other receptacles."[28] The dump lien statutes have not been amended since 1933 and there has been no interpretation of the statutes as to how they apply to natural gas reserves.[29] Accordingly, this Court requests the Alaska Supreme Court to answer the certified questions presented.

## ORDER

This matter is stayed pending proceedings in the Alaska Supreme Court. The parties shall notify this Court whether the Alaska Supreme Court accepts the certified questions in a joint report to be filed within 7 days of the Alaska Supreme Court's decision. If the questions are accepted, the parties shall file a joint status report with this Court six months after the date of acceptance and every six months thereafter.

The Clerk of Court shall provide a signed copy of this order under the official seal of the United States District Court for the District of Alaska. The Clerk of Court shall also provide a copy of the record in this case, in whole or in part, to the Alaska Supreme Court upon request.

DATED this 29th day of January, 2018.

> */s/ Sharon L. Gleason*
> UNITED STATES DISTRICT JUDGE

---

[28] *See* AS 34.35.170(a)(1) ("'dump' or 'mass' means the mineral-bearing sands, gravel, earth, ore, stone, coal, oil, gas, other fluids or minerals extracted, hoisted, and raised from a mine or mining claim, while in mass at the time or on the mining claim or adjacent to it, whether it is deposited in dumps or piles, or placed in hoppers, tanks, or reservoirs, or in sluice boxes or bunkers or other receptacles and whether partially or wholly reduced from its primary state or not").

[29] In *D.H. Blattner & Sons, Inc. v. N.M. Rothschild & Sons, Ltd.*, 55 P.3d 37, 44 (Alaska 2002), the Alaska Supreme Court did not reach this issue because the parties had stipulated that the dump lien applied to the debtor's bank account.

Case No. 3:17-cv-00127-SLG, *All American Oilfield v. Cook Inlet Energy*
Order Certifying Questions to the Alaska Supreme Court
Page 7 of 7